IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-mc-00192-KLM

IN RE APPLICATION OF LOUIS BACON FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Petitioner,

v.

CATHY ARCHER,

Respondent.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Respondent's **Motion to Quash Subpoenas** [#7][1] (the "Motion"). Petitioner timely filed a Response [#13] in opposition to the Motion [#7], and Respondent filed a Reply [#14]. The Court has reviewed the Motion [#7], the Response [#13], the Reply [#14], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#7] is **GRANTED in part** and **DENIED in part**.

**I. Background**

Petitioner Louis Bacon ("Petitioner") commenced this action on November 11, 2017, pursuant to 28 U.S.C. § 1782. *See Ex Parte Application* [#1]. The ex parte application was submitted to assist the Petitioner in connection with two defamation lawsuits (the

---

[1] "[#7]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

"Bahamian Actions") he filed in the Bahamas against a Bahamian publisher named Wendall Jones ("Mr. Jones") and the media outlets owned and operated by Mr. Jones. *Id.* at 1-2. Mr. Jones is the publisher of the *Bahama Journal*, and according to Petitioner, is a proxy of Peter Nygård ("Mr. Nygård"). *Id.* at 3-4. Mr. Nygård is the alleged orchestrator of a smear campaign against Petitioner, and conducts the campaign through proxies in an effort to hide his own involvement. *Id.* Petitioner's counsel alleges the proxies of the campaign include Mr. Jones and Mr. Nygård's lawyer, Keod Smith ("Mr. Smith"). *Decl. of Janet Bostwick-Dean* [#1-3] at 1.

In a related matter in the Southern District of New York, Petitioner filed a similar § 1782 request on behalf of the Save the Bays campaign. [#1-9] at 2-3. The Save the Bays campaign is an environmental coalition in the Bahamas dedicated to preserving marine environments. *Id.* The Save the Bays campaign has filed two lawsuits in the Bahamas concerning Mr. Nygård's attempts to develop his property, Nygård Cay. *Id.* Petitioner is a founder of the Save the Bays campaign. *Id.*

The facts underlying the Petition are generally as follows. On July 21, 2010, Mr. Nygård received a letter ("July 21 letter") from the Prime Minister of the Bahamas which advised him to restore the coastline of Nygård Cay to its original state. *Id.* at 23-24. Petitioner's counsel alleges Mr. Nygård did not comply with the Government's request, and instead continued his development of Nygård Cay through dredge work. *Id.* at 24. Petitioner believes that the Government's letter caused Mr. Nygård to consider Petitioner the "root cause" of Mr. Nygård's problems with the Bahamian government. *Id.*

Petitioner and Mr. Nygård own neighboring properties in the Bahamas. *Id.* at 5. One day after the July 21 letter, Mr. Nygård filed a civil action in the Supreme Court of the

Bahamas, alleging that Petitioner prevented Mr. Nygård from enjoying an easement over the roadway on Petitioner's property. *Id.* at 24-25. Five days after the July 21 letter, Petitioner alleges eleven armed police officers conducted a raid on Petitioner's home in the Bahamas. *Id.* at 25. Following the raid, local and international press published a number of articles about the incident. *Id.* at 26. Petitioner alleges that this sequence of events marked the beginning of Mr. Nygård's smear campaign and states that a Police Commissioner in the Bahamas personally apologized to Petitioner for the incident and indicated that Mr. Nygård was responsible for the raid. *Id.* Approximately six weeks after the raid, the *Daily Mail* published a defamatory article about Petitioner, which was later retracted by the newspaper. *Id.* at 26-27.

Petitioner maintains that Mr. Nygård's alleged smear campaign continues through columns published by Respondent Cathy Archer ("Respondent") in the *Bahamas Journal*. *Ex Parte Application* [#1] at 5. Respondent is a citizen of the Bahamas and writes a bi-weekly column for the *Bahamas Journal* under the byline P.J. Malone. *Decl. of Respondent* [#7-1] at 2. Petitioner considers some of Respondent's columns defamatory. *Ex Parte Application* [#1] at 5.

In this matter, Petitioner previously asked the Court to issue two subpoenas for the taking of a deposition and production of documents from Respondent. *See id.* at 12. The Court granted Petitioner's request. *See Order* [#6]. Respondent now seeks to quash Petitioner's subpoenas by invoking the federal common law newsperson's privilege. *Motion* [#7].

## II. Standard of Review

Any discovery permitted under 28 U.S.C. § 1782 is subject to the Federal Rules of

Civil Procedure. *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1335 (D. Colo. 2015) (citing *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012)). Fed. R. Civ. P. 45 governs depositions of non-parties by subpoena. "The scope of permissible discovery under Rule 45 is set forth in Fed. R. Civ. P. 26(b)(1), which provides, in part, that [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *King v. Solvay S.A.*, No. 14-mc-00196-LTB-KLM, 2014 WL 4267457, at *2 (D. Colo. Aug. 28, 2014) (quotations omitted). The objecting party has the burden of showing that the discovery requested is objectionable. *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 WL 4016003, at *2 (D. Colo. Nov. 17, 2009) (citing *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003)). A motion to quash is further governed by Rule 45(d)(3), which directs a court to quash a subpoena that "subjects a person to undue burden." *See e.g.*, *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-769-MSK-KMT, 2014 WL 3057496, at *1 (D. Colo. July 7, 2014) (granting motion to quash when information sought is "overbroad, irrelevant, unnecessary, and was a fishing expedition designed to gain information . . . ").

Fed. R. Civ. P. 26(b)(2)© provides that a Court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that":

> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues

Additionally, Fed. R. Civ. P. 26© provides that a court may for "good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

## III. Analysis

### A. Newsperson's Privilege

Respondent argues that "[her] knowledge, documents, notes and sources [ ] are privileged under the First Amendment of the U.S. Constitution."[2] *Motion* [#7] at 3. Specifically, Respondent asserts that her information is protected pursuant to the newsperson's privilege. *Id.* at 7.

"The Tenth Circuit has recognized the application of a 'reporter's privilege' under the First Amendment to civil cases." *Johnson v. Sch. Dist. No. 1 in Cty. of Denver & State of Colorado*, No. 12-cv-02950-MSK-MEH, 2014 WL 717003, at *2 (D. Colo. Feb. 25, 2014) (quoting *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)). "When the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood*, 563 F.2d at 438). "Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Id.* First, however,

---

[2] Respondent also asserts in the Motion that "Petitioner's subpoenas should be quashed for failing to follow federal discovery rules." [#7] at 4. However, Petitioner states that Respondent's "procedural objections [ ] have now been cured," *Response* [#13] at 4, and indeed Respondent claims that she "will not continue her procedural objections." *Reply* [#14] at 10. Thus, the Court finds that Respondent's procedural objections in the Motion [#7] are moot.

-5-

"the [ ] court must determine the validity of the claimed First Amendment privilege." *Id.*

### 1. Validity of Respondent's Newsperson Privilege

Petitioner asserts that "[t]he qualified privilege for media reporters . . . does not protect [Respondent]." *Response* [#13] at 4. Petitioner claims that "*Silkwood* recognized some protection from discovery in a case where a journalist has expended her own efforts in a *bona fide*, independent, journalistic investigation of a matter, and the discovering party seeks to piggyback off that work." *Id.* at 4. Specifically, Petitioner argues that "*Silkwood* does not speak to the situation here, where a discovering party seeks evidence of a writer's active participation in a tortious scheme, and so does not govern this action or call for the imposition of a privilege." *Id.* at 5.

Petitioner's interpretation of *Silkwood* is incorrect. In *Silkwood*, a free-lance reporter, for the purposes of making a film, investigated the death of a plaintiff. 563 F.2d at 435. The defendant corporation in the case sought to depose the free-lance reporter. *Id.* However, the reporter refused to answer questions which he deemed confidential. *Id.* On appeal, the Tenth Circuit Court of Appeals sought to determine whether the newsperson's privilege also applied to independent reporters, and ultimately found that it did. *Id.* at 436-37. The *Silkwood* court found that even though the reporter "did not regularly engage in obtaining, writing, reviewing, editing[,] or otherwise preparing the news," the work nonetheless fell under the federal common law privilege. *Id.* Thus, *Silkwood* does not limit the newsperson's privilege to *only* independent reporters, as Petitioner suggests, but instead extends the privilege to them. *See id.*

The Court is not persuaded by Petitioner's argument that "[Respondent] has made no effort whatsoever to establish her *bona fides* as a journalist . . . [as Respondent] never

trained or worked as a journalist or reporter of any kind." *Response* [#13] at 6. The Supreme Court has declared "the liberty of the press is not confined to newspapers and periodicals. . . . The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938). Moreover, despite Petitioner's claim, Respondent has, in fact, published articles as a regular columnist for the *Bahama Journal* from 2016 to present. *Decl. of Respondent* [#7-1] at 2.

Petitioner further argues that "[g]iven that [Respondent's] articles merely repackage tired talking points from Peter Nygård's smear campaign at the behest of Mr. Jones and/or Mr. Nygård himself, they lack any hint of the independence that is the sole justification, and prerequisite, for the privilege's application." *Response* [#13] at 6. Petitioner cites *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011), for the proposition that a person must be independent from the parties in a suit in order to assert the newsperson's privilege. *Id.* at 6. First, the Court notes that *Chevron* is a Second Circuit case and is not binding here. Second, courts in the Tenth Circuit have not held independence to be a prerequisite to asserting the newsperson's privilege. *See, e.g.*, *Gen. Steel Domestic Sales*, 2008 WL 5101341, at *3-5 (holding that a named defendant could assert the newsperson's privilege, but finding that the privilege did not prevent disclosure on other grounds). The only apparent prerequisite to asserting the newsperson's privilege is to be a reporter who gathered information from sources "for the dissemination of such information to the public." *Johnson*, 2014 WL 717003, at *2.

Petitioner argues that he "is not seeking to identify sources who spoke to [Respondent] on an express condition of confidentiality, but is instead seeking the routine,

non-confidential, editorial information." *Response* [#13] at 7. Petitioner, citing *Herbert v. Lando*, 441 U.S. 153 (1979), argues that "a defamation plaintiff may at minimum get discovery of non-confidential information about the editorial process," leaving Respondent without the ability to invoke the newsperson's privilege. *Id.*

However, Petitioner's argument lacks merit. As previous cases in this Circuit emphasize, the newsperson's privilege protects both confidential and non-confidential information and sources. *See e.g.*, *United States v. Foote*, No. 00-CR-20091-01-KHV, 2002 WL 1822407, at *2 (D. Kan. Aug. 8, 2002) ("[N]onconfidential information gathered by a reporter or other journalist is entitled to privilege as well); *Re/Max Int'l., Inc. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994) (quoting *Loadholtz v. Fields*, 389 F. Supp. 1299, 1302-03 (M.D. Fla. 1975) ("This distinction [between confidential and nonconfidential sources] is utterly irrelevant to the 'chilling effect' that . . . subpoenas would have on the flow of information. . . .")). Further, *Herbert* holds "[w]hen a member of the press is alleged to have circulated damaging falsehoods and is *sued for injury* to the plaintiff's reputation, there is no privilege under the First Amendment's guarantees of freedom of speech and freedom of the press. . . ." 441 U.S. at 153 (emphasis added). Respondent, a member of the press, was not *sued for injury* to the plaintiff's reputation, but instead is a non-party to the Bahamian Actions.

Respondent asserts she "has been writing a regular column for the *Bahama Journal* since April, 2016." *Motion* [#7] at 9. Thus, the Court finds that Respondent is a reporter with respect to the newsperson's privilege. *See Johnson*, 2014 WL 717003, at *2. Therefore, because the information sought by Petitioner is information gathered from sources for its dissemination to the public, the Court finds that Respondent is entitled to

assert the federal common law newsperson's privilege.  *Id.*

## B.   Balancing Test

As noted above, when the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.  *Grandbouche*, 825 F.2d at 1466 (citing *Silkwood*, 563 F.2d at 438).  Because Respondent seeks to quash Petitioner's subpoenas, the Court must weigh the merits of Petitioner's request.  Specifically, Petitioner is seeking:

> 1. All documents and/or communications related to any articles published in the *Bahama Journal*, including under the by-line "P.J. Malone," and including but not limited to all documents and/or communications related to the truth or falsity of the content of any such articles.
>
> 2. All documents and/or communications related to: (a) [Petitioner], (b) the smear campaign, © Save the Bays, (d) [Mr.] Smith, (e) [Mr.] Nygård, (f) Nygård Cay, or (g) [Mr.] Jones.

*Exhibit B* [#1-4] at 9.  Additionally, Petitioner seeks to depose Respondent.  *Id.* at 10.

### 1.   The Relevance of the Evidence

Petitioner must first demonstrate the "information sought is centrally relevant."  *Re/Max Int'l.*, 846 F. Supp. at 911.  If the information sought has "questionable relevance, this weigh[s] in favor of protection."  *Johnson*, 2014 WL 717003, at *3 (quoting *Silkwood*, 563 F.2d at 438).

Petitioner contends "any insight [Respondent] can provide into the scope and nature of the [s]mear [c]ampaign is thus indisputably relevant to the Bahamian Actions against Mr. Jones."  *Ex Parte Application* [#1] at 6.  Petitioner seeks "evidence of continued acts of defamation . . . proving Mr. Jones' continued use . . . of the *Bahamas Journal* as a conduit for the smear campaign against [Petitioner]."  *Response* [#13] at 11.  Further, Petitioner

argues "[t]he central relevance of the requested discovery to both general and aggravated damages in the Bahamian Actions . . . weighs in favor of denying the Motion." *Id.* at 12. Lastly, Petitioner alleges "[Respondent] has authored nearly 200 anti-[Petitioner] (or pro-Nygård) articles that have appeared in the *Bahamas Journal* from April 2016 to present." *Ex Parte Application* [#1] at 5.

Respondent first argues that "Petitioner cannot in good faith claim to be pursuing evidence directly relevant to the editorial process that generated the allegedly defamatory 2013 and 2015 publications at issue in the underlying Bahamian Litigation, when the information Petitioner seeks concerns [Respondent's] subsequent articles, which were published beginning in April of 2016." *Reply* [#14] at 9. Next, Respondent argues "Petitioner erroneously contends [aggravated damages] are the equivalent of punitive damages" and "the discovery he seeks from [Respondent] . . . would be one of 'a wide range of matters' that the judge could consider in awarding general damages in the case." *Id.* at 9-10. However, Respondent has failed to address the relevance of general damages in the Bahamian Actions. *Id.*

With respect to this factor concerning relevance, the Court notes that a court in one of the Bahamian Actions held: "The Court finds that documents pertaining to the smear campaign . . . are relevant for a fair trial of both actions and are not a fishing expedition. . . ." [#13-5] at 3. Further, Petitioner's counsel in the Bahamian Actions states, "When assessing general damages in Bahamian defamation actions, a judge is entitled to take into consideration a wide range of matters, including a Defendant's 'conduct from the time when the libel was published *down to the verdict.*'" *Decl. of Janet Bostwick-Dean* [#13-4] at 3 (emphasis added). For these reasons, the Court finds that evidence or knowledge

Respondent possesses of Mr. Smith, Mr. Nygård, or Mr. Jones' continued alleged defamatory conduct is centrally relevant to the issue of damages and a fair hearing in the Bahamian Actions.

While Respondent argues that the Petitioner "failed to demonstrate why the information . . . he now seeks from [Respondent] is necessary to prove his defamation claims," *Reply* [#14] at 10, this misstates the relevance standard required. The Court in *Re/Max Int'l. v. Century 21 Real Estate Corp.* stated the information sought must be "substantially relevant to the central issue" of the foreign proceedings. 846 F. Supp. at 912. Correspondingly, evidence of the editorial process regarding articles that provide information about the source of defamatory speech is relevant to a fair hearing in the Bahamian Actions. Furthermore, Respondent concedes that information a judge may take into account for general damages is "substantially relevant to the central issues in the Bahamian Actions." *Motion* [#7] at 10.

However, the Court does not consider information relating to "any articles" published in the *Bahama Journal* under the byline "P.J. Malone" to be relevant to Petitioner's Bahamian Actions.[3] Such a request for "any articles" is not centrally relevant to the case against Mr. Jones and Jones Communications, and Petitioner has failed to demonstrate any purported relevance. Nonetheless, all documents and/or communications related to Petitioner, the alleged smear campaign, Save the Bays, Mr. Smith, Mr. Nygård, Nygård

---

[3] Here, the Court does not know whether Respondent has written articles that do not relate to the subjects identified in the subpoena. Respondent states the current bi-weekly newspaper column "examines the evolution of the ongoing conflict" between Petitioner and Mr. Nygård, but does not state the column *exclusively* examines this conflict. *See Decl. of Respondent* [#14-1] at 3.

Cay, or Mr. Jones, are relevant to the Bahamian Actions, if any such documents exist. For these reasons, this factor weights in favor of disclosure of this material.

## 2. The Necessity of Receiving the Information Sought

Regarding this factor, the Court must consider "whether the [Petitioner] *needs* to obtain" information in order to prove a claim. *See Johnson,* 2014 WL 717003, at *7 (emphasis in original) (considering whether plaintiff needed the identities of a reporter's sources for a newspaper article in order to prove the sources acted with a retaliatory motive). In addition, if information is sought that leads to "just litigation of Plaintiffs' claims," other Courts in the Tenth Circuit have determined that the information is necessary. *See Amaya v. Bregman*, No. 14-cv-0599 WJ/SMV, 2016 WL 10296798, at *7 (D.N.M. May 13, 2016).

In its Motion [#7], Petitioner's argument conflates the necessity of the information sought with the relevance of the information for the Bahamian proceedings. However, Petitioner later states:

> [S]ubsequent proceedings in the Bahamas have established that Mr. Jones cannot or will not produce the records that [Petitioner] seeks here from [Respondent], confirming that [Respondent] is a necessary source of those records. On January 9, 2018, the Bahamian Court specifically ordered Mr. Jones to disclose information in his possession about Mr. Nygård's smear campaign and Mr. Jones' role in it. Mr. Jones purported to comply with the Bahamian Court's order on June 4. However, he still has not disclosed any documents pertaining to the smear campaign, including any of the requested material. . . . Mr. Jones' recent failure (and/or inability) to produce any discovery about the smear campaign in the Bahamian action confirms that [Respondent] is "uniquely capable of providing the information Petitioner seeks."

*Notice* [#16] at 2-3. Further, Petitioner states that without the requested discovery in advance of a pre-trial case management conference, Petitioner may be barred from using

-12-

the material in the Bahamian Actions.  *Id.* at 1.

Respondent argues that "Petitioner . . . is already aware of all of [Respondent's] purportedly defamatory articles . . . and has already obtained certain unspecified materials about the alleged Nygård smear campaign from other third parties. . . . Thus, Petitioner has failed to demonstrate why the information he now seeks from [Respondent] is necessary to prove his defamation claims."  *Reply* [#14] at 10.  However, Respondent did not contest the information provided in Petitioner's Notice [#16].  Accordingly, because Petitioner's statement that Respondent is "uniquely capable" of having knowledge of an alleged smear campaign is essentially unrebutted, the Court finds that this factor weighs in favor of disclosure.

### 3. Whether the Information is Available from Other Sources

In determining whether the information is available from other sources, a reporter's privilege may be overcome only with a clear and specific showing that the information is not obtainable from other available sources.  *Johnson*, 2014 WL 717003, at *7 (quoting *Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7-8 (2d Cir. 1982), *cert denied*, 459 U.S. 909 (1982)).  The party seeking disclosure must demonstrate it has independently attempted to obtain the information elsewhere and has been unsuccessful.  *Silkwood*, 563 F.2d at 438.  Some courts require the party seeking disclosure to demonstrate all reasonable alternative sources of information are exhausted prior to overriding a First Amendment privilege.  *See e.g.*, *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA (JL), 2007 WL 2428000, at *4 (N.D. Cal. Aug. 22, 2007) (stating "[Defendant] bears the burden of establishing that no alternative sources exist through which he could obtain the relevant information in a less chilling manner"); *Zerilli v. Smith*, 656 F.2d 705, 714-15 (D.C. Cir.

1981) (stating "appellants cannot escape their obligation to exhaust alternative sources"). The Tenth Circuit standard in *Silkwood*, by contrast, is less restrictive, requiring only an independent attempt to obtain the information elsewhere. 563 F.2d at 438.

Petitioner argues that the information requested from Respondent is uniquely in her possession, specifically "personal testimony about Mr. Nygård's smear campaign and her knowledge of Mr. Jones' role in it." *Response* [#13] at 14. Respondent argues that "Petitioner has already shown that [he has] obtained evidence of alleged aggravating circumstances from other sources" and cites evidence obtained from a third-party witness in a prior § 1782 matter in New York, whose information was "relevant and admissible and used during the Bahamian actions." *Motion* [#7] at 11-12. Further, Respondent states "Petitioner also admits to having obtained copies of emails and documents relating to the Bahamian Actions from two other third-parties, which Petitioner claims related to the purported 'smear campaign'." *Id.* Finally, Respondent argues that Petitioner has not demonstrated the information is unavailable from other sources, such as the alleged orchestrator of the defamatory scheme, Mr. Nygård, who Respondent asserts is not a newsperson. *Reply* [#14] at 10.

However, Petitioner contends information "from other third parties . . . did not shed light on [Respondent's] writings for the *Bahama Journal*." *Response* [#13] at 14. Further, Petitioner states "if anything, that Petitioner has sought discovery from other proxies to Mr. Nygård's smear campaign, without obtaining the information about [Respondent] needed for the purposes of the Bahamian Actions, demonstrates Petitioner's diligent efforts 'to obtain the information from other sources and only reinforces the fact that [Respondent] is uniquely capable of providing the information Petitioner seeks'." *Id.* at 14-15.

Here, Petitioner has not directed the Court's attention to evidence that Petitioner has attempted to obtain the relevant information from Mr. Nygård, and hence, has not extinguished the possibility that information regarding the alleged smear campaign is available from an alternate source. Nonetheless, to the extent that Respondent is personally knowledgeable of a smear campaign, and her knowledge of Mr. Nygård, Mr. Smith, or Mr. Jones' role or distance from such a campaign, does appear to be information unique to Respondent, especially since Defendants in the Bahamian Action have not produced relevant documentation regarding Respondent's writings in the *Bahama Journal*. *See Notice* [#16]. Because Mr. Nygård is a reasonable source of information regarding an alleged smear campaign, but Respondent also possesses a perspective that is seemingly unavailable to Plaintiffs in the Bahamian Actions, the Court finds this factor weighs neither in favor of disclosure nor withholding the information requested.

### 4. The Nature of the Information

Petitioner contends "most of the discovery sought by Petitioner relating to articles in the *Bahama Journal* concern [sic] the 'editorial process' and go [sic] to the heart of the malicious wrongdoing at issue in the Bahamas Actions." *Response* [#13] at 8. For example, Petitioner seeks:

> [I]nstructions [Respondent] received from Mr. Jones and/or Mr. Nygård about her writings for the *Bahama Journal*, other communications between [Respondent] and Mr. Jones or Mr. Nygård about her writings for the *Bahama Journal* and Mr. Nygård's smear campaign, the terms and conditions of [Respondent]'s employment and/or payment by Jones Communications, Mr. Jones or Mr. Nygård, and other documents and communications that may be in [Respondent]'s possession concerning Mr. Nygård and the smear campaign.

*Id.*

Respondent argues that such discovery is not relevant to the state of mind of the Defendants in the Bahamian Actions, as it falls outside of the time frame of the articles the Bahamian Actions are premised on. *Reply* [#14] at 8. However, the Court disagrees with Respondent's argument. To the extent that Mr. Jones, Mr. Nygård, or Mr. Smith revealed information to Respondent regarding an alleged smear campaign, and the prolonging of such a campaign, Respondent is likely a first-hand witness and record-keeper of such information or statements. *See, e.g.*, *Johnson*, 2014 WL 717003, at *6 (finding where reporter was a first-hand witness to alleged defamatory statements, the Court found relevant statements made to reporter weighed in favor of disclosure). Because Respondent has arguably published articles in the *Bahama Journal* that can be construed to defame Petitioner, the Court finds that the nature of the information sought from Respondent weighs in favor of disclosure.

For the reasons stated above, the Court finds the nature of the information sought is relevant and necessary to the Bahamian Actions. While Petitioner has not demonstrated all sources possibly available to it have been ruled out, this factor weighs neither in favor of disclosure nor withholding the information. As three of the factors weigh in favor of disclosure, and one weighs neither in favor of disclosure or withholding information, the factors altogether weigh in favor of requiring disclosure of the information requested.

### IV. Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#7] is **GRANTED in part** and **DENIED in part**. The Motion [#7] is **granted** to the extent that Respondent is not required to provide

testimony related to "any articles" published in the *Bahama Journal* under the byline "P.J. Malone."  The Motion [#7] is **denied** to the extent that Respondent has knowledge of documents and/or communications related to Petitioner, the "smear campaign," Save the Bays, Mr. Smith, Mr. Nygård, Nygård Cay, or Mr. Jones.  The Motion [#7] is further **denied** to the extent Respondent seeks to quash the deposition subpoena of Respondent.

Dated:  September 17, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge