IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-mc-00192-CMA-KLM

IN RE APPLICATION OF LOUIS BACON FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

     Petitioner,

v.

CATHY ARCHER,

     Respondent.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Respondent's **Motion for a Protective Order** [#23][1] (the "Motion"). Petitioner timely filed a Response [#41] in opposition to the Motion [#23], and Respondent filed a Reply [#43]. The Court has reviewed the Motion [#23], the Response [#41], the Reply [#43], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#23] is **DENIED**.

**I. Background**

Petitioner Louis Bacon ("Petitioner") commenced this action on November 11, 2017, pursuant to 28 U.S.C. § 1782. *See Ex Parte Application* [#1]. The ex parte application was submitted to assist Petitioner in connection with two defamation lawsuits (the "Bahamian

---

[1] "[#23]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

Actions") he filed in the Bahamas against a Bahamian publisher named Wendall Jones ("Jones") and the media outlets owned and operated by Mr. Jones. *Id.* at 1-2. Mr. Jones is the publisher of the *Bahama Journal* and, according to Petitioner, is a proxy of Peter Nygård ("Nygård"). *Id.* at 3-4. Mr. Nygård is the alleged orchestrator of a smear campaign against Petitioner. *Id.* He allegedly conducts the campaign through proxies in an effort to hide his own involvement. *Id.*

Petitioner maintains that Mr. Nygård's alleged smear campaign continues through columns published by Respondent Cathy Archer ("Respondent") in the *Bahama Journal*. *Ex Parte Application* [#1] at 5. Respondent is a citizen of the Bahamas and writes a bi-weekly column for the *Bahama Journal* under the byline P.J. Malone. *Decl. of Respondent* [#7-1] at 2. Petitioner considers some of Respondent's columns defamatory. *Ex Parte Application* [#1] at 5.

Pursuant to Petitioner's subpoena, the Court previously ordered Respondent to produce documents and communications related to Petitioner, the "smear campaign," Mr. Nygård, Mr. Jones, and others. *See generally Order* [#17] (providing a more detailed background on the Bahamian Actions). Respondent produced these documents, along with a purported confidential indemnification agreement (the "Agreement") which came into her possession through the following circumstances.

The Agreement appears to have been created in California by Lavely & Singer, P.C. ("L&S") and Mr. Nygård, relating to separate litigation in that jurisdiction. *Motion* [#23] at 2. Mr. Nygård then sent the Agreement to Richard Good ("Good"), who, along with L&S, served as counsel for Mr. Nygård. *Decl. of Richard I. Good* [#34] at 2. Mr. Good contends that he received the Agreement "as a confidential attorney-client communication." *Id.* at

2. On March 27, 2017, Respondent received the Agreement from the office of Mr. Good in an email response to her request for copies of documents relating to a California lawsuit between Petitioner and Bianca McKinney. *Ex. 1 to Decl. of S. Shackelford* [#41-1] at 1. On September 17, 2017, this Court ordered Respondent to produce documents related to Petitioner, the "smear campaign," Mr. Nygård, and others. *See generally Order* [#17]. Respondent provided these documents to her attorney, Kenneth Morris ("Morris"), along with the Agreement. *Decl. of Kenneth R. Morris* [#37] at 1-2. Mr. Morris reviewed the documents produced by Respondent for privilege, identified the Agreement as potentially confidential, and contacted Mr. Good to inquire whether his office had intended to disclose the Agreement to Respondent. *Id.* at 2. Mr. Good stated that disclosure of the Agreement to Respondent must have been inadvertent, and Mr. Morris informed Mr. Good that the Agreement would be removed from the production. *Id.* Mr. Morris failed to do so, however, and the Agreement was produced to Petitioner's attorneys. *Id.* On January 11, 2019, Mr. Morris notified counsel for Petitioner of the purported inadvertent disclosure and requested immediate return of the Agreement, but counsel for Petitioner refused to comply. *Id.* at 2.

In the present Motion [#23], Respondent moves for a protective order to claw back the Agreement on behalf of L&S, the author of the document and one purported holder of privilege therefor. *Motion* [#23] at 2. Respondent argues that California's substantive law of privilege applies to this clawback dispute and that the Agreement is protected as privileged under both attorney-client privilege and attorney work product doctrine. *Id.* at 3-7. Respondent also claims that the inadvertent disclosure of the Agreement did not operate as a waiver and that the crime-fraud exception is not applicable. *Id.* at 8-11. Petitioner contends that the federal common law of privilege applies and that the

Agreement is not protected under either attorney-client privilege or attorney work product doctrine. *Response* [#41] at 2-7. Petitioner also argues that the disclosure of the Agreement operated as a waiver and that the Agreement is discoverable under the crime-fraud exception. *Id.* at 8-11.

Because the Court holds that Respondent has no standing to assert the privilege rights of third parties to this dispute, the Court does not address the issues of whether the Agreement is protected under either attorney-client privilege or work product doctrine, whether the disclosure of the Agreement operated as a waiver of privilege, or whether the Agreement is otherwise discoverable under the crime-fraud exception.

## II. Analysis

The Court first addresses whether California law or federal common law with respect to privilege applies to this dispute. The Court then addresses Respondent's standing to assert the privilege rights of third parties to this dispute.

**A.    Choice of Law**

Respondent argues that California state law controls the issue of privilege in this action because L&S, party to and purported privilege holder of the Agreement, is located in California, and because Petitioner's attorneys are making use of the document to defend against claims in California state court. *Motion* [#23] at 3. Thus, Respondent argues that California has a strong interest in having its privilege law apply. *Id.* Petitioner contends that federal common law governs questions of privilege because Petitioner brought this case pursuant to 28 U.S.C. § 1782, a federal statute. *Response* [#41] at 3.

The Tenth Circuit has not directly addressed the issue of whether federal or state

privilege law applies where one party received a purportedly privileged document due to the other party's alleged inadvertent disclosure pursuant to a federal court-ordered subpoena, and where the receiving party subsequently used the document in a separate state court proceeding. In *Motley v. Marathon Oil Co.*, the Tenth Circuit held that where a plaintiff asserts both a federal and a state claim, the court should look to the law of the state in deciding privilege issues as to the state causes of action. 71 F.3d 1547, 1551 (10th Cir. 1995). However, this holding is distinguishable because it does not hold that state privilege law applies to federal causes of action. *See Hinsdale v. City of Liberal*, 961 F. Supp. 1490, 1494 (D. Kan. 1997).

"Where federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern." *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990). "Because the jurisdictional basis of the proceeding is a federal statute, federal common law governs [Respondent's] assertions of attorney-client privilege." *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 3923092, at *5 (D. Colo. Oct. 1, 2010) (applying federal privilege law to a Section 1782 proceeding). *See also* Fed. R. Evid. 501. The Southern District of New York has also found that federal common law controls questions of privilege raised in Section 1782 proceedings. *See In re Federation Internationale de Basketball*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000). Further, the D.C. Circuit has recognized a general "preference for federal privilege law when it conflicts with state privilege law." *In re: Sealed Case (Medical Records)*, 381 F.3d 1205, 1212 (D.C. Cir. 2004) (citing *Weinstein's Federal Evidence* § 501.02[2][c], at 501-14 (2d ed. 2004)). *See also Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2013 WL 1129429, at *13 (D. Colo. Mar. 18, 2013) (citing *Hancock v. Hobbs*, 967 F.2d 462, 467

(11th Cir. 1992)) ("We therefore hold that the federal law of privilege [applies in a federal question case], even if the [discovery] is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.").

Accordingly, the Court finds that because this matter is before the Court pursuant to 28 U.S.C. § 1782, the federal common law of privilege applies to this dispute. *Chevron*, 2010 WL 3923092, at *5.

## B.     Standing to Assert Privilege

"The attorney-client privilege belongs to the *client*, not the attorney." *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2015 WL 6473477, at *20 (D. Kan. Oct. 27, 2015) (emphasis in original). As such, the "privilege is a right of the client and of no other person." *United States v. Harnage*, 662 F. Supp. 766, 774 (D. Colo. 1987). Conversely, with respect to attorney work product doctrine, the privilege is "personal to the attorney." *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983); *see also United States v. Nobles*, 422 U.S. 225, 238 (1975) (explaining that "the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case").

The Court does not make any determination at this time as to which parties hold any privilege with respect to the Agreement besides determining that neither Respondent nor her counsel have claim to such privilege. It is not precisely clear which parties are holders of any purported privilege with respect to the Agreement; the holder of any attorney-client privilege appears to be Mr. Nygård as a former client of L&S and current client of Mr. Good, and the holder of any purported privilege under attorney work product doctrine appears to be L&S or Mr. Good, as counsel to Mr. Nygård at the time the Agreement was executed.

Importantly, neither Respondent nor her counsel, Mr. Morris, had any part in the execution of the Agreement, nor are they mentioned anywhere therein.  Further, the record shows no evidence that either Respondent or Mr. Morris had any knowledge that the Agreement existed prior to the March 27 email.  Thus, regardless of which nonparties to this dispute might hold privilege with respect to the Agreement, it is clear that neither Respondent nor Mr. Morris hold either privilege.

Section 1782(a) of 28 U.S.C. provides, in relevant part, that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  *See generally Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 2135217 (D. Colo. May 25, 2010).  As a general rule, individuals do not have standing to assert the rights of third parties not involved in the litigation.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Here, the asserted holder of any protection under either the attorney-client privilege or work product doctrine has not moved in this Court to claw back the Agreement.  Respondent recognizes that neither she nor her attorney are holders of the privileges asserted with respect to the Agreement.  *Motion* [#23] at 2.  Rather, Respondent cites one Third Circuit case as authority to assert privilege on behalf of L&S.  *Id.* (citing *In re Chevron Corp.*, 633 F.3d 153, 164 n.15 (3d Cir. 2011)).  There, the Third Circuit noted in dicta in a footnote with no analysis or legal citation that "section 1782(a), when providing for protection of documents shielded by 'any legally applicable privilege,' does not limit the protected documents to those of which the respondent in the section 1782 proceeding is the holder of the privilege."  However, such a rule, i.e., that protection may be extended beyond documents to which the respondent is the holder of privilege, has not been recognized in the Tenth Circuit (nor

by any other court in the country, to the best of the Court's knowledge), and the Court finds this authority unpersuasive in light of the governing precedent in this circuit, as cited above.

The Court is aware of no applicable legal authority that gives Respondent standing to assert a privilege which she avers belongs to another under the circumstances of this case, and Respondent has cited none. The appropriate procedure is for the holder of any alleged privilege to intervene in this litigation and assert that privilege on his own behalf. *See* Fed. R. Civ. P. 24; *see also, e.g.*, *Nelson v. Greenspoon*, 103 F.R.D. 118 (S.D.N.Y. 1984); *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163 (S.D.N.Y. 2008); *In re Katz*, 623 F.2d 122 (2d Cir. 1980); *In re Grand Jury Matter*, 735 F.2d 1330 (11th Cir. 1984); *Convertino v. United States DOJ*, 674 F. Supp. 2d 97 (D.D.C. 2009).

Accordingly, the Court finds that Respondent has no standing to assert privileges she or her attorney do not hold, and that the Motion [#23] therefore must be denied.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#23] is **DENIED**.

Dated: May 24, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge